BARBARA K. BERRETT (4273)
ZACHARY C. MYERS (15302)
**BERRETT & ASSOCIATES, L.C.**
Washington Federal Building
405 South Main Street, Suite 1050
Salt Lake City, UT  84111
Phone 801-531-7733
bberrett@berrettandassoc.com
zmyers@berrettandassoc.com

*Attorneys for Plaintiff*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEVEN CONNER<br><br>     Plaintiff,<br><br>v.<br><br>GENEVA ROCK PRODUCTS, INC.,<br>BRIAN RICHMANN,<br><br>     Defendants. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br><br>Civil No. 2:19-cv-00323-PMW<br><br>The Honorable Paul M. Warner |

Plaintiff STEVEN CONNER, submits the following Complaint against Defendants

GENEVA ROCK PRODUCTS, INC. ("Geneva") and BRIAN RICHMANN:

1

## NATURE OF THE CLAIMS

1.      This suit is brought by a former employee of Geneva under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; 42 U.S.C. §1981; and through the Court's pendent jurisdiction, for claims arising from a practice and pattern of racial discrimination and infliction of emotional distress. Geneva's agent Brian Richmann was Mr. Conner's foreman. Mr. Richmann harassed Mr. Conner based on his race by calling him names, such as "nigger," and spitting on him. Geneva, through its agent, Richmann, discriminated against Mr. Conner in the conditions of his employment and inflicted severe emotional distress upon him.

2.      Plaintiff seeks all available equitable relief, damages, attorney fees, costs and interest, punitive damages, as well as declaratory and injunctive relief.

## PARTIES

3.      At all relevant times, Plaintiff Steven Conner was a Utah resident and was an employee of Geneva within the meaning of 42 U.S.C. § 2000e(f).

4.      Geneva Rock Products, Inc. ("Geneva") is a Utah corporation. Among other things, Geneva lays asphalt.

5.      Geneva headquarters is located at

6.      Geneva has over 15 employees.

7.      Geneva has over 100 employees.

8.      Geneva has over 200 employees.

9.      Geneva has over 500 employees.

10.     As a corporation, Geneva acts through its shareholders, directors, employees, and agents. As the employer of those who set policy and who are involved with its business operations, Geneva is responsible for the acts and omissions of its managers, employees, and agents.

11.     At all relevant times, Defendant Brian Richmann was a Utah resident.

12.     At all relevant times, Richmann was an employee of Geneva within the meaning of 42 U.S.C. § 2000e(f).

## JURISDICTION AND VENUE

13.     This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5 and § 1981; and Utah law. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343.

14.     Pursuant to 28 U.S.C. § 1391(b), venue is proper with this Court as all the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Utah.

15.     Plaintiff filed a charge of discrimination with both the Utah Anti-Discrimination and Labor Division ("UALD") and the Equal Employment Opportunity Commission ("EEOC") and has otherwise exhausted his administrative remedies within the meaning of Title VII.

16.     The EEOC/UALD issued Plaintiff a "Notice of Right to Sue" on February 7, 2019, which was received by Plaintiff on February 9, 2019 and Plaintiff filed his initial Complaint within ninety (90) days.

17.     The Notice of Right to Sue is attached as Exhibit 1.

## GENERAL ALLEGATIONS

1.      Mr. Conner is black.

2.      Geneva hired Mr. Conner on approximately July 5, 2017.

3.      Mr. Conner was employed as a Roller Operator. He was hired as a seasonal employee.

4.      Mr. Conner's foreman was Richmann.

5.      Shortly after Mr. Conner began working, Richmann began harassing Mr. Conner based on his race.

6.      Richmann called Mr. Conner "fucking nigger," "stupid nigger," "retarded nigger," as well as other racially offensive terms on multiple occasions.

7.      After calling Mr. Conner a "nigger," Richmann spit on Mr. Conner's shoe. This spitting occurred on more than one occasion.

8.      Richmann also harassed Mr. Conner in other ways, including yelling at him and calling him names. Mr. Conner was singled-out for this treatment because of his race.

9.      On August 21, 2017, Richmann yelled at Mr. Conner and called him a "mother fucking stupid nigger."

10.     On the same day, Mr. Conner contacted Jesse Averett and reported what Richmann had done.

11.     Richmann was fired shortly thereafter.

12.     On information and belief, Geneva was aware of Richmann's harassing behavior, which was open and obvious, yet allowed it to continue, until Mr. Conner spoke out on August 21, 2017.

13.     After Richmann's employment was terminated, Trent Jepperson became Mr. Conner's new foreman.

14.     Richmann's friend, and Geneva employee, Tonya Williams, continued to harass Mr. Conners, calling him a "stupid fucking monkey" on multiple occasions.

15.     Mr. Conner reported Williams' comments to Jepperson.

16.     On August 30, 2017, Williams apologized to Mr. Conner and stopped calling him names, but she became intensely and unfairly critical of Mr. Conner's work and would also ignore him when he needed her assistance.

17.     Approximately two weeks after Richmann's termination, Mr. Conner's crew was paving a parking lot close to Richmann's residence. While working, Jepperson found a loaded bullet on the paver near the heating element.

18.     Mr. Conner was working in close proximity to the machine. On information and belief, the bullet was left on the machine in order to intimidate and frighten Mr. Conner.

19.     The racial harassment that Mr. Conner endured was sufficiently severe or pervasive to alter conditions of his employment and create an abusive working environment.

20.     October 10, 2017, Mr. Conner was laid-off.

21.     Mr. Conner was laid-off earlier than other employees on his crew.

22.     At least one of Mr. Conner's crewmates was hired at the same time as Mr. Conner, yet continued working for several weeks after Mr. Conner was laid-off.

23.     Mr. Conner was treated differently than similarly situated employees, and suffered an adverse employment action because of his protected opposition to discrimination.

24.     Geneva's decision to terminate Mr. Conner's employment earlier than other seasonal employees was motivated and intended in part as retaliation for Mr. Conner's complaint and opposition to racial harassment in the workplace.

25.     Several other members of Mr. Conner's crew were invited by Geneva to return to work the next season. Mr. Conner was not invited to return.

26.     Geneva's decision not to invite Mr. Conner to return to work the next season was motivated and intended in part by retaliation for Mr. Conner's complaint and opposition to racial harassment in the workplace.

## CULPABILITY

27.     Geneva's actions were of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.

28.     The actions of the executives, managers, and other staff are fairly attributable to Geneva because these actions occurred while they were working and were within the scope of their employment.

29.     Additionally, the actions of Geneva supervisors, officers, and agents are attributable to the companies because:

a.  The acts of the supervisors, officers, and agents were implicitly and without
    limitation intended, directed, ratified and/or authorized by Geneva because of the
    past history of similar acts engaged in by Geneva supervisors and human
    resources staff;

b.  Despite having knowledge of supervisors' and human resources employees' past
    history of similar acts and unfitness, Geneva acted recklessly in continuing to
    employ, promote and/or retain them;

c.  Geneva agents that subjected Mr. Conner to discipline were acting within the real
    or apparent scope of their employment.

30.     Geneva's actions were taken in the face of a perceived risk that such actions
would violate federal law.

31.     Geneva acted with malice or with reckless indifference to the federally protected
rights of the aggrieved Plaintiff.

32.     Mr. Conner is entitled to recover punitive damages in an amount to be established
by proof at trial.

## FIRST CAUSE OF ACTION
### (Retaliation)
### (Against Defendant Geneva)

33.     Plaintiff incorporates the allegations of the above paragraphs herein.

34.     Plaintiff engaged in a protected activity by reporting suspected instances of
discrimination based on race and racial harassment. When Plaintiff reported the discrimination

7

and harassment, he was acting under a reasonable, good faith belief that Geneva violated his rights.

35.     Geneva retaliated against Plaintiff for opposing unlawful racial harassment, which retaliation violated 42 U.S.C.A. § 2000e-3(a).

36.     Plaintiff was subjected to a material adverse action soon after the protected activity took place. Specifically, he was laid-off early and was not invited to return for the next season.

37.     There exists a causal connection between the protected activity and the adverse action.

38.     Geneva's decision to fire Mr. Conner was an action that a reasonable employee would have found materially adverse, meaning it might have discouraged a reasonable worker from reporting suspected discrimination based on race.

39.     As a direct and proximate result of Geneva's retaliation, Plaintiff has incurred damages in an amount to be proven at trial.

40.     As a result of Geneva's actions, Plaintiff is entitled to an award of punitive damages against Geneva pursuant to the Civil Rights Act of 1991, 42 U.S.C.A. § 1981a(b), et seq., in addition to other damages, in such amount as will be proven at trial.

41.     Plaintiff is entitled to attorney's fees pursuant to 42 U.S.C. §§ 2000e-5(k), 12117(a) in an amount to be established at trial.

## SECOND CAUSE OF ACTION
### (Racial Harassment and Hostile Work Environment)
### (Against Defendant Geneva)

42.

43.      Plaintiff was subjected to racial epithets and other harassing behavior by his foreman.

44.      The conduct was not welcomed by Plaintiff.

45.      The conduct was motivated by the fact that Plaintiff is a black person.

46.      The conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

47.      Plaintiff believed his work environment to be hostile or abusive as a result of the conduct.

48.      In regards to conduct by non-management employees, management-level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct because an employee provided management level personnel with enough information to raise a probability of harassment of black people in the mind of a reasonable employer, and/or the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

### THIRD CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**
**(Against Defendant Richmann)**

49.     Defendant Richmann intentionally engaged in some conduct toward the Plaintiff considered outrageous and intolerable in that it offends the generally accepted standards of decency and morality.

50.     Richmann acted with the purpose of inflicting emotional distress or where any reasonable person would have known that such would result.

51.     Severe emotional distress resulted as a direct result of the Richmann's conduct.

52.     As a direct and proximate result, Plaintiff has incurred damages.

### INJUNCTIVE RELIEF

53.     Plaintiff incorporate the allegations of the above paragraphs herein.

54.     Geneva, along with its supervising employees, officers, agents, and all those subject to its control or acting in concert with it, should be forthwith enjoined from causing, encouraging, condoning, or permitting the practice of racial discrimination against black employees by supervisors and officers within the company.

55.     Geneva should further be required to:

    a.      Notify all officers, employees and supervisors employed by Geneva through individual letters and permanent posting in prominent locations throughout its offices, that racial discrimination violates Title VII of the Civil Rights Act, regulatory

guidelines of the Utah Labor Commission and the Equal Employment Opportunity
Commission;

b.      Ensure that employees complaining of any unlawful discrimination can
avail themselves of the full and effective use of the complaint, hearing, adjudication, and
appeals procedures for complaints of discrimination established by Geneva, pursuant to
Equal Employment Opportunity Commission regulations, 29 C.F.R. §§1613.201–
1613.283 (1979); and

c.      Develop other appropriate means of instructing employees of Geneva of
the harmful nature of unlawful discrimination. Geneva should be required to return to this
Court within 60 days after the entry of an injunctive order to report on the steps it has
taken in compliance with such order and to present its plans for the additional measures
required by such injunctive order. The Court should retain full jurisdiction of this case.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.      Issue an order enjoining Geneva to cease and desist from the conduct described
above.

2.      Issue an order requiring Geneva to take steps to protect Plaintiff and other
employees similarly situated from the type of conduct described in above, and from all other
forms of discrimination in the future.

11

3.      Issue an order requiring Geneva to adopt and disseminate an effective policy protecting employees from discrimination in the workplace and establishing reasonable and adequate procedures for investigating complaints of racial harassment and race discrimination and taking suitable remedial action.

4.      Award Plaintiff back pay, including bonuses, pension benefits, and other employment benefits which would have accrued if Plaintiff had not lost his opportunities for advancement with Defendants' companies in an amount to be proved at trial. Award Plaintiff compensatory damages for his emotional suffering in an amount to be established at trial.

5.      Award pre-judgment and post-judgment interest at the highest lawful rate;

6.      Award Plaintiff compensatory damages, including wages, employment benefits, and liquidated damages in an amount to be established at.

7.      Award Plaintiff attorneys fees in an amount to be established at trial, pursuant to 42 U.S.C.A. §2000e-5(k).

8.      Award Plaintiff costs, including expert witness fees, interest, and such other relief as this Court may deem proper.

9.      Award Plaintiff punitive damages in amount to be established at trial.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

Dated May 7, 2019.

**BERRETT & ASSOCIATES**

12

_/s/ Zachary C. Myers_
ZACHARY C. MYERS
BARBARA BERRETT
Attorneys for Plaintiff